# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JUSTIN T. MOYERS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 12-1400-CV-W-BP-P |
| | ) |
| MICHAEL BOWERSOX, | ) |
| | ) |
| Respondent. | |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the South Central Correctional Center in Licking, Missouri, has filed *pro se* this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2007 conviction and sentence for second-degree murder, which was entered in the Circuit Court of Clay County, Missouri. Petitioner's conviction and sentence were affirmed on direct appeal (Respondent's Exhibit G); his motion for post-conviction review filed pursuant to Mo. Sup. Ct. R. 29.15 was denied (Respondent's Exhibit J, pp. 48-62); and the appeal thereof was dismissed as untimely filed (Respondent's Exhibit K-M).

Petitioner's amended petition asserts five (5) grounds for relief: (1) ineffective assistance of trial counsel for failing to examine and challenge petitioner's arrest warrant; (2) ineffective assistance of trial counsel for failing to suppress petitioner's written statement to police; (3) ineffective assistance of trial counsel for failing to use state's witness, Larry Brophy, to show that petitioner's grandmother had made a statement that the witness attributed to petitioner, and

for failing to show the jury that petitioner's September 15, 2001, written statement was made in response to his grandmother's allegations; (4) ineffective assistance of trial counsel for failing to exclude expert testimony of Dr. Gulino; and (5) due process violations based on the state's use of false statements to obtain an arrest warrant and on petitioner's September 15, 2001 written statement.

Petitioner's first petition raised only two claims – actual innocence and ineffective assistance of post-conviction counsel (Doc. No. 1), which respondent argued were not cognizable and failed as a matter of law and fact (Doc. No. 11). After petitioner was ordered to file an amended petition setting forth specific and numbered legal claims with sufficient supporting facts to justify his claims (Doc. No. 25), respondent argued that petitioner's claims were untimely filed and not rendered timely by the relation-back doctrine (Doc. No. 34). In response to this Court's Order to address the merits of petitioner's claims as stated in his amended petition (Doc. No. 37), respondent contends that petitioner has procedurally defaulted his claims and, alternatively, that they are without merit (Doc. No. 52).

## **FACTUAL BACKGROUND**

In affirming petitioner's conviction and sentence, the Missouri Court of Appeals, Western District, set forth the following facts:

> In October 1999, Jaimmilynn Millsap and her two children, Miranda (one year old) and Wraith (five years old), lived with Ms. Millsap's boyfriend, Justin Moyers, in a mobile home in Caldwell County. On October 4, 1999, Ms. Millsap's mother watched the children at her residence while Ms. Millsap and Mr. Moyers were working. Miranda fell and hit her head on a chair while at her grandmother's house; she had a bump on her head as a result. Mr. Moyers arrived around 8:00 PM to pick up the children and take them home. He was angry with Ms. Millsap when he arrived; he told Ms. Millsap's mother that Ms. Millsap was

having an affair, and he called Ms. Millsap names. Mr. Moyers took the children home; Ms. Millsap was working a night shift and was not present.

Mr. Moyers's mobile home was located next to his parent's mobile home. During the evening of October 4, 1999, Mr. Moyers called his parents and told them that Miranda was not breathing and he needed help. When Mr. Moyers's father arrived at Mr. Moyers's residence, he saw Miranda lying on a blanket with Mr. Moyers nearby. Miranda was blue; she had blood around her lips and bubbles around her nose. Mr. Moyers's father began CPR in accordance with instruction provided by a 911 operator. Two law enforcement officers arrived at Mr. Moyers's house at approximately 10:09 PM. They attempted to perform CPR while waiting for an ambulance to arrive. An ambulance arrived, and Miranda was taken to a hospital at approximately 10:23 PM. When she arrived, she had no signs of life. She was pronounced dead at 11:43 PM.

Mr. Moyers told law enforcement officers that a loud vehicle woke him up, and Miranda was completely covered by a blanket when he checked on her. When he uncovered her, she was not breathing. A police detective observed a bruise and bump on Miranda's face. Upon viewing Miranda's body, Ms. Millsap's mother observed bruising on Miranda's face that was not present when Mr. Moyers picked her up earlier that evening.

On October 5, 1999, the day after Miranda died, Ms. Millsap's mother observed that Wraith's buttocks were black and blue. The marks had not been present when she watched him the prior day. She contacted the sheriff's department. A deputy observed and photographed small red bruises all over Wraith's buttocks. Mr. Moyers admitted spanking Wraith and subsequently pled guilty to misdemeanor assault of Wraith for the spanking.

In his written statement to police, Mr. Moyers again stated that he was awakened by a loud noise, went to check on Miranda, and discovered her wrapped in a blanket. He stated she was almost completely covered by the blanket, that only her foot and a portion of her leg were visible. She was laying face-down. When he uncovered her, she was not breathing. He called his parents and asked them to call 911. His father came over and began CPR; there was a red, foamy material coming out of her mouth.

Shortly after Miranda's death, Ms. Millsap's sister was at the county jail to make a statement. While there, she overheard Mr. Moyers say: "Oh, shit, I killed a nigger." She reported this to a guard, though it was not documented at the time.

On October 5, 1999, forensic pathologist Dr. Samuel Gulino performed an autopsy on Miranda. There were no head injuries, and he was able to exclude disease as the cause of death. He was unable to come to any conclusions to a reasonable degree of scientific certainty as to the cause of death. He ruled the cause of death "undetermined." Dr. Gulino was concerned by the presence of

3

bruising and scrapes on Miranda's face.  Those injuries appeared to have occurred within less than 24 hours before her death.  Dr. Gulino added a comment to his autopsy report dated November 3, 1999, that the facial injuries were "worrisome for non-accidental injury and the case is therefore suspicious for foul play."  He also wrote that "an asphyxia death such as suffocation cannot be excluded."

Dr. Gulino subsequently moved to Florida.  During the summer of 2001, he was asked by law enforcement officers to examine additional information and re-examine Miranda's case.  On September 18, 2001, Dr. Gulino wrote the Jackson County, Missouri, Medical Examiner's Officer a letter stating that, based upon additional investigative information provided to him by law enforcement, he was reclassifying the case as a homicidal asphyxia.  He requested the following changes to the front sheet of the autopsy report: manner of death from undetermined to homicide; immediate cause of death from undetermined to asphyxia; and how injury occurred from reportedly found unresponsive not breathing to assaulted by other.  An amended autopsy report was issued October 3, 2001.  The only change was a new face sheet replacing the old face sheet.  The cause of death was listed as asphyxia, and the manner of death was listed as homicide.

There were no changes from a medical standpoint between the time of the original report and the amended report.  The new information Dr. Gulino received included a written statement made by Mr. Moyers wherein he described an action he did while attempting to stop Miranda's crying.  Mr. Moyers stated he pushed Miranda down in a corner where she was lying, and she stopped crying.  It was Dr. Gulino's opinion that Miranda was intentionally suffocated.  The fact that there were facial bruises would not be consistent with an accidental death due to a blanket being wrapped around Miranda.  Further, that blood was coming from Miranda's nose and mouth was worrisome.  He believed that Miranda did not die of natural causes; instead she died of asphyxia from a homicide.

On March 6, 2002, a complaint was filed in Caldwell County charging Mr. Moyers with second degree murder for causing Miranda's death by suffocating her.  He was released on bond.  His bond was subsequently revoked and, on March 15, 2003, Mr. Moyers was in custody in the Ray County Jail as a result.  He escaped from the jail by pulling a light down from the ceiling and crawling through the ceiling.

On March 17, 2003, Mr. Moyers arrived at Lawrence Brophy's mobile home in rural Cameron, Missouri.  Mr. Moyers stated that he needed a place to stay.  Mr. Brophy allowed him to spend the night, despite knowing that Mr. Moyers was wanted by law enforcement.  Mr. Moyers told Mr. Brophy that he escaped jail and that he was wanted for murder.  Mr. Brophy urged Mr. Moyers to turn himself in, but Mr. Moyers refused.  Mr. Moyers told Mr. Brophy that he had "murdered this baby" by flipping her over and pushing her face down in blankets

4

or pillows. He stated he was trying to stop Miranda's crying and "this is the way we put kids to sleep in Missouri." Mr. Brophy stated that Mr. Moyers laughed about the situation.

Mr. Brophy called law enforcement the next morning. When they arrived, Mr. Moyers stole a truck and fled. A police chase ensued. During the course of the chase, Mr. Moyers attempted to strike law enforcement vehicles, rammed law enforcement vehicles, attempted to force law enforcement vehicles off the road, and attempted to push one officer down an embankment. Mr. Moyers ran over spike strips but continued to drive with deflated tires. He twice attempted to strike the officer who placed the spike strips on the road. The seventy mile chase lasted approximately one hour. Mr. Moyers's vehicle was stopped by police in Kansas City when he attempted to cross a median and became stuck in the grass. During the case, Mr. Moyers's average speed was between ninety and ninety-five miles per hour. No officer was hurt during the chase. Corporal Paul Kimbell of the Missouri Highway Patrol recorded with the camera located in his vehicle his initial attempt to stop Mr. Moyers and the ensuing police chase. Mr. Moyers subsequently pled guilty to the escape, to assaulting a law enforcement officer, and to tampering with a vehicle.

A jury trial was held November 27-29, 2006. At trial, Mr. Moyers testified that Miranda was crying and would not take her bottle, so he pushed down on her a little into the corner and she made an "ah ah" sound and quieted down a little bit. He stated that she took the bottle and was fine. The jury found Mr. Moyers guilty of murder in the second degree. On January 26, 2007, the trial court overruled Mr. Moyers's motion for a new trial and sentenced him to life imprisonment.

Respondent's Exhibit G, pp. 6-8.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **PROCEDURAL DEFAULT**

Petitioner admits that he did not present any of his current claims to the state courts. Doc. No. 28, pp. 9, 12, 15, 16. Petitioner attempts to overcome his default by alleging actual innocence and ineffective assistance of post-conviction counsel under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Doc. No. 28, pp. 9, 12, 15, 16.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before presenting those issues in an application for habeas relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." *Sloan* at 1381.

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A. <u>Actual Innocence</u>

---

The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

6

To claim that his state procedural default would result in a fundamental miscarriage of justice, a petitioner must present new evidence that affirmatively demonstrates he is innocent of the crime for which he was convicted. *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir.2006). Claims of actual innocence require habeas petitioners to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Evidence is new only if it was unknown to defendant at the time of trial, due diligence would not have uncovered the evidence, the evidence is material, and the emergence of the new evidence would probably have led to an acquittal. *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007). Specifically, the petitioner must demonstrate that, in light of the new evidence, it is more likely than not that no reasonable juror would have found them guilty beyond a reasonable doubt. *House v. Bell*, 547 U.S. 518, 538 (2006). Actual innocence means factual innocence not mere legal insufficiency. *Bousley v. United States*, 532 U.S. 614, 624 (1998).

In support of petitioner's argument that he is actually innocent, petitioner contends that the police knowingly used false statements, used false forensic findings, used a false arrest warrant, and unlawfully interrogated him. He further contends that he was denied a fair trial because of the testimony of Lawrence Brophy and the admission of his written statement of September 15, 2001. Finally, petitioner contends that the court allowed inadmissible expert opinion testimony. Doc. No. 30, p. 11. Petitioner's claims all concern the quality of the evidence used against him rather than offering new evidence demonstrating that he did not commit the crimes for which he was charged and convicted.

7

Petitioner's failure to establish that his claims involve new evidence means that he cannot rely on them to provide him a gateway[2] for this Court to review his underlying defaulted claims. *Abdi v. Hatch,* 450 F.3d at 338. Petitioner offers no explanation as to how the information provided in his claims was not available to him prior to trial, how due diligence would not have uncovered this evidence, or how it is likely that this evidence would have led to an acquittal. *United States v. Baker,* 479 F.3d at 577. Moreover, petitioner is not presenting evidence of innocence as much as he is saying that the evidence utilized against him at trial should not have been held against him for one reason or another. Petitioner's claim of legal innocence as compared to factual innocence does not justify setting aside the bar to review of his claims. *Bousley v. United States*, 532 U.S. at 624.

B. <u>Ineffective Assistance of Post-Conviction Counsel</u>

A petitioner "may establish cause for a procedural default . . . in two circumstances: where the state courts did not appoint counsel in the [post-conviction] proceeding for an ineffective-assistance-at-trial claim; and where appointed counsel in the [post-conviction] proceeding . . . was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

Petitioner was appointed counsel for his post-conviction proceeding by the Office of the State Public Defender on January 26, 2009. Respondent's Exhibit I, pp. 91-92. Counsel moved to withdraw her appearance and was granted leave to do so on April 30, 2009. Respondent's Exhibit I, pp. 98-99. Counsel stated in her motion to withdraw that she was informed by petitioner on two separate occasions that he wished to proceed *pro se*. *Id*. On June 25, 2009,

---

[2] A free-standing claim of actual innocence, if it exists, "would require 'more convincing proof' than the gateway standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence." *Dansby v. Hobbs*, 766 F. 3d 809. 816 (8th Cir. 2014)(*citing House v. Bell*, 547 U.S. at 554-55.

8

petitioner filed a Motion to Proceed *Pro Se* where he confirmed that he wished counsel to withdraw from the case and asked the court to appoint "conflict-free counsel" or to allow him to proceed *pro se*. Respondent's Exhibit I, pp. 100-01. On June 30, 2009, the court granted petitioner leave to proceed *pro se*. Respondent's Exhibit I, p. 102.

Six months after filing his Motion to Proceed Pro Se, petitioner filed a Notice of Abandonment of Post-Conviction Counsel. Res. Ex. I, pp. 102-08. The Rule 29.15 trial court ruled that petitioner was not abandoned by Rule 29.15 counsel because petitioner dismissed counsel on his own accord. Respondent's Exhibit J, pp. 49-50. Petitioner's Rule 29.15 appeal was dismissed for failure to file a timely brief on appeal. Respondent's Exhibits K-M.

"In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation." *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). "Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom." *Evans*, 371 F.3d at 445 (citing *Strickland*, 466 U.S. at 687).

Petitioner claims that post-conviction counsel was ineffective for refusing to raise the claims contained in petitioner's *pro se* Rule 29.15 motion. Resp. Ex. I, pp. 103-08. Petitioner admits, however, that counsel only withdrew after she informed petitioner that, based on her review of the record, she believed only one claim was viable and that she would not be raising the claims contained in petitioner's *pro se* motion. Resp. Ex. I, p. 104. Such strategic decisions are virtually unchallengeable, especially under 28 U.S.C. § 2254. *Strickland*, 466 U.S. at 690-91; *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

9

In *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987), the United States Court of Appeals for the Eighth Circuit stated that "the courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his best judgment as to the attitudes and sympathies of judge and jury." *See also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful); *Henderson v. Norris*, 118 F.3d 1283, 1287-88 (8th Cir. 1997) (matters of trial strategy presumed correct), *cert. denied*, 522 U.S. 1129 (1998). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689).

Counsel is not ineffective for failing to bring a meritless claim. *Jones v. Barnes*, 463 U.S. 745, 745 (1983). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" in order to properly state a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. Stating that post-conviction counsel chose certain claims over others does not amount to a showing that counsel's performance "fell below an objective standard of reasonableness" as required under *Strickland*. 466 U.S. 668, 687-88 (1984).

Moreover, petitioner has failed to demonstrate that counsel's failure to bring his *pro se* claims prejudiced him. In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability

10

is a probability sufficient to undermine confidence in the outcome." *Id*. There is little likelihood that the outcome of petitioner's post-conviction hearing would have been different had counsel attempted to bring meritless claims. Withdrawal of counsel after petitioner requested to proceed *pro se* in his Rule 29.15 proceeding does not qualify as "abandonment" of petitioner by his Rule 29.15 counsel without notice as required to excuse his state procedural default. *See Maples v. Thomas*, ___U.S.___, 132 S. Ct. 912, 922 (2012); *Martinez v. Ryan*, 132 S. Ct. at 1318.

Thus, petitioner's federal petition can be denied on the sole basis of his state procedural default and his inability to demonstrate actual cause for and resulting prejudice therefrom or a fundamental miscarriage of justice if his claims are not considered on the merits. In the alternative, however, the Court will review petitioner's claims on their merits, or lack thereof, in the following section.

## **LACK OF MERIT**

As respondent discusses in his second amended response (Doc. No. 52), even if petitioner's claims were not procedurally barred from federal habeas corpus review, his claims also are without merit. As to Ground 1, trial counsel was not ineffective under *Strickland,* U.S. at 689, for failing to file an otherwise meritless suppression motion regarding the arrest warrant (allegedly based on false allegations by the victim's grandparents) because law enforcement had probable cause independent of the arrest warrant to arrest petitioner for killing the victim. *Tokar v. Bowersox*, 198 F. 3d 1039, 1048 (8th Cir. 1999). *See* Doc. No. 52, pp. 5-7.

As to Ground 2, the state trial court held a pretrial suppression hearing in which trial counsel challenged the voluntariness of petitioner's September 15, 2001, unsolicited inculpatory statements and subsequent written statement admitting that he killed the victim and ruled that

11

those statements were admissible. Respondent's Exhibit A, pp. 71-124. Trial counsel cannot be found unreasonable under *Strickland, supra*, for failing to accomplish the suppression of the statements that the trial court ruled admissible. *Smith v.* Groose, 998 F. 2d 1439, 1442 (8th Cir. 1993). Moreover, petitioner has failed to show that he was prejudiced by trial counsel's failure to have the statements suppressed especially given the other evidence of petitioner's guilt. Doc. No. 52, pp. 7-11.

In Ground 3, petitioner argues that trial counsel did not introduce evidence that petitioner's statements to a witness, Larry Brophy, were a response to what petitioner's grandmother said to investigators – that the grandmother accused petitioner of killing the infant baby. Petitioner, however, fails to show how failure of trial counsel to introduce prejudicial evidence that his grandmother accused him of killing the victim prejudiced him or affected the outcome of the trial in a negative manner. Doc. No. 52, pp. 11-13.

Ground 4 argues that trial counsel was ineffective for failing to exclude the expert testimony of Dr. Gulino as inadmissible under Missouri evidentiary law. *See Clark v. Groose,* 16 F. 3d 960, 963 (8th Cir. 1994) (admissibility issues are reserved to state courts). Doc. No. 28, pp. 14-15. Trial counsel did, in fact, challenge the scientific validity of the forensic examiner's testimony concerning the cause of the victim's facial wounds, and the trial court held a pretrial hearing at which the forensic examiner testified that he trains other doctors to become forensic pathologists and that his methods were used in forensic pathology textbooks. Respondent's Exhibit A, pp. 6-67. As respondent argues in his second amended response, the trial court concluded, as have other Missouri courts, *see State v.* Hays, 88 S.W. 3d 47, 62 (Mo. App. 2002), that the expert testimony was admissible based on the complex nature of forensic examination and the witness's testimony about the basis for his expertise. Doc. No. 52, pp. 13-15. Given that

12

petitioner's inculpatory statement was offered at trial and that Brophy testified that petitioner visited him after his escape from jail and admitted to having killed the victim, petitioner cannot show that there is a reasonable probability that the outcome of his trial would have been different if trial counsel had accomplished excluding the forensic examiner's expert testimony. Doc. No. 52, p. 15.

Finally, as to Ground 5, petitioner attempts to state a cumulative due process violation resulting from the state's use of the allegedly false statements in the arrest warrant and use of petitioner's September 15, 2001, written statement. For the reasons discussed above regarding Grounds 1 and 2, however, the alleged errors did not constitute individual constitutional violations; therefore, petitioner has failed to demonstrate prejudice amounting to a cumulative due process violation. *Middleton v. Roper*, 455 F. 3d 838, 851 (8th Cir. 2006). Doc. No. 52, pp. 15-17.

## A CERTIFICATE OF APPEALABILITY WILL BE DENIED

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

13

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

                                                        /s/ Beth Phillips_____
                                                        BETH PHILLIPS
                                                        UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: December 8, 2014.      .